Last case of the day, it's People v. Robert Fickes. You may proceed. Thank you, Your Honors. May it please the Court. My name is Allison Paige Brooks, and I represent the People in this case. First of all, I'd like to apologize for my cold that I might have to cough. I'm sorry for that. First of all, I'm not intending on really addressing the jurisdictional arguments, issues, unless this Court directs me to. I think the State and I, the Defendant and I, are both in agreement that either one of the notices of appeals do provide this Court with jurisdiction, the other one then would be either premature or too late. But essentially, I think the State's position, just to clarify, is our first notice of appeals should be good enough under the Harper decision, but this Court does disagree that I think that it falls to the second notice of appeals to be timely. So the standard review is de novo, because here the child court's factual findings are not really in dispute, because mostly the child court made very little findings of facts, very few, and the ones that the child court did say were that the Defendant had a severe hearing impairment, and that the interviewer's failure to take appropriate steps to ensure that there was equally effective communication as there would have been with someone without a disability. It seems like that's language drawn from the regulations of the Americans with Disabilities Act, and not essentially directed at the test for voluntariness. Under the Murdoch decision, paragraph 30, the relevant standard for voluntariness of statements like these is whether the Defendant made a statement freely and voluntarily, without compulsion or inducement of any kind, or whether his will was overborne at the time that he spoke. So essentially this is a case where there is no classical forms of compulsion or coercion, such as threats or promises, physical abuse. What the Defendants and the child court mainly relied on was the fact that the police never offered to provide the Defendant with an American Sign Language interpreter, something that was not obvious until we reached the suppression stage, in which the Defendant testifies that that is his preferred form of communication. At the time of the questioning, the Defendant had used his hearing aid and spoke in English, in spoken word, with the detective, with Anthony Mayfield, and two people from the Department of Children and Family Services, one of whom was an intern and didn't really participate. So under the totality of circumstances test, there are several factors that favor the State. Here the questioning was only 46 minutes long. It appeared the Defendant knew the police were coming because he received a text message about the fact that there had been a complaint made. Interrogation was held inside the Defendant's own home, where he was not being detained. And again, there was no physical or mental abuse, and no threats or promises. And the Defendant never indicated to the police that he was either requesting or preferring to have the assistance of an ASL interpreter. Never told them that that's the way he preferred to speak. Other factors do slightly, or to some degree, tend to favor the Defendant. He was 62. He had some health problems. Apparently his education was somewhat limited, not having completed high school. He had only a few prior experiences with law enforcement. I think you mentioned one time in which he was arrested and the case was dropped. And the main factor that they rely on is the fact that he was less effective as an oral communicator due to his hearing impairment. Would you say that again? He was what? He was less effective as an oral communicator. He couldn't really talk as well or understand as well. So the question becomes, because under Murdoch, no one factor is dispositive. There is no really case that's directly on point here. It seems like we wouldn't be here arguing this case if it were a situation where he had no hearing impairment. If that were set aside and it was just simply a question and answer session between the police and a criminal suspect who was asked the same questions, there wouldn't be any allegations of coercion. But the fact is that he did have a hearing impairment and that's what they're mostly relying on as the reason why this confession should be suppressed. The state does agree with the defendant on one thing. It is important for this court to listen to the audio recording. However, the state draws different conclusions about the nature of that recording. The defendant's claim is that it reflects an extreme difficulty with both understanding and expressing himself in speech. I think there was one word, victim, that he had difficulty expressing. And there were a few instances in which he misunderstood things. There was one situation where there was a switch in questioner when he was being asked about child pornography that was on his phone. And so it seemed that he thought he was being asked if he had his phone. So the temporary confusion resulted from him answering yes to that question, but follow-up questioning very quickly realized that that was not, in fact, an admission to having child pornography on his phone. There was also some difficulty, I think, in him understanding the concept or the word of an erection when he was asked. And these were about that during the offense. And that was follow-up questioning. And that's not something that would have induced him to claim to the policeman beforehand that he was forced by the 7-year-old girl to touch her private areas. So that's not an allegation that he's making, that that's causally related to his decision to speak as he did to the police, but simply they were cited below by the defense as examples of why there were problems with this questioning because of those misunderstandings that developed. However, they were identified by the police, by the interviewers, and they were corrected through follow-up questioning. So the state does disagree with the amount of miscommunication that occurred. Primarily, I think there were references to several ha-type things that were asked in response to questions, in which case the interviewers seemed to always repeat the question or rephrase the question. As I said, sometimes the most difficulty happened when there was this, the few times in which there was a back-and-forth and one interviewer would ask a question and the next question would be asked by the other interviewer. That seems to be where a lot of the difficulty arose. So the defendant did testify that he could not hear words, only intonations or sounds. However, the recording seems to rebut that claim, and it is also not something that the trial court explicitly accepted in the trial court's remarks. Whether the defendant testified credibly or whether that was in fact true, that was not necessarily something that the trial court believed. And even if it were, it's something that is really rebutted by the recording because if the defendant didn't understand any words, he wouldn't be able to parrot back many of the complicated words that he did, or it would have been an exercise in futility to even ask him what his name was or anything like that if he didn't understand any words. So the fact is there was a lot of effective communication that went on, and it was not an ideal situation, but the question becomes then basically on de novo review, is that something that requires as a matter of either federal due process or state law, voluntariness law, does that require the confession to be suppressed as involuntary? And that's really the question this court has to decide, not whether there was a violation of the Americans with Disabilities Act, for example, which is not something the trial court relied on. And it's apparently something that the defendant has not asserted as an independent ground for sustaining the judgment. I think the defendant does say that if it were an ADA violation, that should be something that is considered in the totality of circumstances, but that there's no real on-point authority for that assertion. How much weight do we give the trial court in terms of its decision? Well, under de novo review, this court does not have to defer to anything except the trial court's factual findings. But the state's position is that the trial court's factual findings, which seem to be almost drawn exactly from the language of the ADA breaks, is not... From the what? The Americans with Disabilities Act regulations. I mean, essentially not taking appropriate steps to ensure that their communication was equally effective. I mean, that's almost verbatim from the regulations. It seems like what the trial court almost did here was say that it was... Well, not saying that it was an ADA ruling, not suppressing it on the basis of an ADA violation, but suppressing it under involuntariness, so based on a communication difficulty. Whereas a lot of these cases, I think the defendant's relying on this notion of a state law, involuntariness that's independent of the Connolly case, which deals with the fact that under federal due process standard, there has to be some sort of police overreaching or coerciveness. And it's not a situation where the defendant... I think there was another case I cited where the defendant wrote ADA law exclamation, et cetera, and basically insisted to the police that he should be provided with an interpreter. Nothing like that happens here, so it's not a situation where he felt he had to confess because he insisted on having an interpreter, and those requests went ignored or denied, and therefore he felt helpless or something. There's no testimony or claim that that's what happened to him, so it's not a situation where the failure to provide, to even ask him if he wanted an interpreter was somehow causally related to his decision to admit what he did, what he admitted. So for that reason, it's not a federal due process case, and that was the state's primary argument. And then the defendant claims that we forfeited state law voluntariness by not raising it in our initial brief. But it's actually something that was not ruled on by the trial courts explicitly. It's something that the defense has raised for the first time in their appellee brief. So the state should be entitled to respond to that argument in its reply brief without having forfeited the issue. Under the Westmoreland case... At the trial level, what was argued there by the defendant? I don't remember specifically if they had raised the issue of not having to show any coercion under the Westmoreland case, being able to base their argument solely on the defendant's personal characteristics, which is why I'm citing the Westmoreland case, which got back to other arguments where the Bernasco decision and Bragg's, and both cases that were basing on suppression of evidence without evidence of police coercion, were defendants who had subnormal intelligence and obvious intellectual capacity limitations. And the problem with those situations is that the defendant who doesn't have the same level of intelligence as a normal person is more prone to suggestion, and that's what's been recognized by the courts. And that's one major problem, that it doesn't exist with people with hearing impairments. I think even the defendant admits that they shouldn't be treated the same as someone who is either a child or who has subnormal intelligence. They have a hearing impairment. That's different. That's not the same problem as the Bernasco and Bragg's cases where involuntariness could have been found without a federal due process police coercion problem. The defendant does not cite any case involving hearing impairments that have found from inside Illinois, that it found as a matter of Illinois law, that these sort of confessions or admissions or statements should be suppressed solely on the defendant's personal characteristics if he's not provided with the means of communication of his choice. So essentially this court would be making new law in the area by upholding a suppression order based solely on the defendant's hearing impairments where there's no evidence of police overreaching or any sort of coercive behavior by a state actor. And that's essentially, it should be a matter for the legislature. It could be the state may develop a statute saying that defendants are entitled to have, if they're hearing impaired, entitled to have an interpreter if they wish and that essentially the confession could not be admitted without that having happened. That would be a matter for the legislature and not the courts to enact such a rule. So essentially what happens here is the trial court was left with having to decide this case on the issue of voluntariness. And whether the confession is reliable or trustworthy is not relevant to the questions of whether the statements were voluntary. So essentially this is like shoehorning the case into the square peg into the round hole. It's not something that, it doesn't seem what the trial court did here was following the, with all due respect, but not following the totality of circumstances test and simply elevating a single factor to make it dispositive in violation of Murdoch. And for that reason, the state requests the court to reverse this question order and remain for further proceedings and I would like to reserve some time for rebuttal and I'll answer any questions now at this time if you have any. There don't appear to be any. Thank you, Your Honor. May it please the court. Counsel, my name is Darren Kimmel and on behalf of the Office of the State Appellate Defender I represent the appellate Mr. Robert Figgis Sr. Helen Keller liked to say that blindness cuts us off from objects but deafness cuts us off from other people. Mr. Figgis has been profoundly deaf since his birth. He's been cut off from other people his entire life. I don't think any of us who can hear can ever really understand what that would be like to have the whole world go completely silent not just for a moment of your life but for the entirety of it. It's difficult to imagine. What I do know is that this is not what a civilized society looks like. Interrogating an old, sick, deaf man for 46 minutes without a sign language interpreter until he sees... Counsel, it seems to be rather a bit of an overstatement to attack the police procedures on this basis when, if I understand the record correctly, your client never said, by the way, I'm deaf and I'm having trouble talking. Am I right? That's what the record shows? Your Honor is correct. He never asked for a sign language interpreter. Okay, so we have a guy who has a hearing impairment. I suspect that would be evident to any reasonably intelligent adult speaking with him. That was the trial court's first finding. Okay. Therefore, what? Should they assume that he is incapable of understanding and should they assume that they can't continue to interrogate him in the absence of his saying anything along these lines? You don't have to be... You know, he's 62 years old. He's not a little kid. Being interviewed by the cops about an allegation of sexual misconduct with children is a pretty serious matter. If he can't understand, as you claim, because this is just such an uncivilized mode of interrogation, shouldn't the law and shouldn't society reasonably require him to say so? I think there's a few things in there I want to unpack. Go ahead. Address them all. The broad answer is no, he shouldn't be required to say so. There's two intersections. How about the first thing is why shouldn't he be required to say so? I think it would be a good idea if he said so. That would certainly not hurt things. But your question assumes a number of things. It assumes that he understands what they're there for, that he understands that this is a serious matter. Okay, pausing right there. What evidence is there in this record to indicate he did not understand it? I'd flip it the other way, Your Honor, and say that there's nothing in the record to say that he does understand it. Well, that's not true. We have the conversation that clearly demonstrates he had an idea what this was all about. Counsel, wasn't there a text message that he received from the alleged victim's mother indicating the alleged victim's father had made a report and that the police would be coming to speak with him? I think, Your Honor, the text is quite a succinct summary of what Your Honor stated at a greater length. It's not clear what Mr. Fitch's reading level is. Most deaf people don't have the vocabulary of even poorly educated hearing people because they don't have as much language input. Do we know? What does the record show about his ability to comprehend? That he didn't graduate high school. But that's not the same. Counsel, let me ask you one more thing. He mentioned to the police when they were talking to him about this alleged incident that he knew they were going to be coming to talk to him because of the text message. So we know he had some understanding of the information that was being relayed and that the police would be coming to talk to him. I would narrow that, Your Honor. I'd say he got a text message that said, I have reported you for something, didn't say what, and that they are coming for you. That's all he knew. And that assumes that he got the same understanding from that text as we would reading it, which is one assumption. It also, Your Honor's question assumes that he understands that there was a sex crimes case pending against him. That's an additional assumption that we have to make. But back to the broader point of all of this. Why do we have to assume it? During the course of this 45-minute inquiry, wasn't there a discussion about that? Doesn't the record show, indeed the videotape of this interrogation show, that he was responding in the context of this is a sex offense involving kids? Your Honor, he was responding. But we're not sure how much he actually understood. Did he understand enough to know this was a sex offense involving kids? I don't think we can make that determination from this record. I hope so. English is my mother tongue. See, I can listen to what people say. And if we're talking in Chinese or Greek, that might be a little different. But how about I don't understand it? How about I don't understand what you're saying? Or what are you indicating here? Your Honor, it's one of the reasons I included a rather lengthy section, a background section on hearing impairment in the brief. Most hearing people have no understanding. Myself included. Was that raised at the trial court level, though? Your Honor. That information considered by the trial court? The trial court made its first factual finding based on observing Mr. Figgis on the witness stand. That's what it's based on. And from that, listening to him talk, observing him, the trial court found that it is blatantly obvious and would be to anyone who tries to converse with Mr. Figgis that he's severely hearing impaired. That's based on observing him. There was no expert testimony. Right. That's my question to you is, was this information that you've included in your brief included at the trial court level? No, Your Honor. And my argument would be that this is a secondary source, all these sources. We're just talking about what is the intersection between disability rights and due process. And that loops back to, Your Honor, Justice Seidman's initial question here. Didn't he have to ask for a sign language interpreter? There's two things at issue there. There's the American with Disabilities Act, which mandates that reasonable accommodations be provided. It doesn't mandate that the person that needs the accommodation has to ask for them. It's when it becomes obvious that an accommodation is needed, it mandates that one is provided. But that's a separate issue than what we're talking about here, which is whether due process concerns under state law or federal law were satisfied enough for voluntariness. Whether he asked for a sign language interpreter or not is not really at issue here. That's something of a red herring. We have to determine whether due process is satisfied. And the cases are pretty clear in Illinois and federally that when it's obvious that a suspect has an impairment that makes them more vulnerable to police suggestion and coercion tactics. And when it's obvious that they are vulnerable and it is obvious that there are communication problems, that those statements may become involuntary. The trial court made the factual finding that I referenced a minute ago that it would be blatantly obvious to anyone that Mr. Fix is severely hearing impaired. That means he's deaf. Even if he could repeat or parrot, as opposing counsel used the word, back certain words, which is a tactic deaf people use to appear with it in social conversation, that doesn't mean he understood enough to satisfy due process. And that's what the Supreme Court case Murdoch is talking about. The counsel cites, she cites the overall rule that your willpower has to be overborne. But Murdoch goes on to distinguish other cases like People v. Bragg by saying that, in Murdoch, that a child could clearly, the child's statements were voluntary because the child could clearly communicate with the police and understand the questions that were posed. In Bragg, the suspect couldn't do that because the suspect had mental handicap issues. And so we're talking about mental infirmities and also based on the young, you know, juveniles that aren't you asking us to create a whole new category? I mean, there's no allegation that your client has a mental impairment. He obviously isn't a juvenile. So are you asking us to create a special category now for hearing impaired individuals? No, Your Honor, I don't think so because the totality of the circumstances test, this broad test, includes all those factors. We've had a number of cases that have listed factors like familiarity with English from People v. Bernasco or People v. Morgan listed physical condition. Those factors only appear in the list because they might actually be dispositive someday. And courts should take those things into account. The Illinois Supreme Court didn't list those things by accident. If a person can't understand English, whether it's because they speak German and not English, or because they're deaf and they can't understand audible language at all, or just a certain amount, just enough to parrot back the occasional word to appear with it, that's not voluntary. And we have to follow that signal from the Illinois Supreme Court. Now, it's true that two types of cases fall under that subset, and those cases have been decided before, children and people with mental handicaps. But the same principles apply to deaf individuals because they are similarly vulnerable. The opposing counsel made an argument about the fact that mentally handicapped people are prone to suggestion that somehow deaf people are not, and that they shouldn't be treated the same way. I mentioned in my brief that we shouldn't lump them all together because they're not the same. But the legal principles are, in fact, the same. For purposes of our discussion today, I simply meant we shouldn't treat deaf people as if they're mentally handicapped. But the legal ramifications of having a damaged pathway of hearing to the brain, and having a damaged brain that can't understand the information coming through a perfectly fine pathway, turns out to be about the same. You don't understand all of the words that are coming at you. And that's what's happened in these cases where mentally handicapped people parrot back certain words. They're trying to be with it. It's the same thing you see in Alzheimer's patients sometimes. They attempt to fake memories because they want to appear with it for social interaction. And that's because what most people want, above all things, is to have dignity. They want to be accepted, and they want to be with it with other people. And that surpasses even the urge to be understood. Deaf people spend their whole lives not being understood. They're used to it. And they don't typically have sign language interpreters following in their footsteps. They have to go out into a hearing society and function with hearing people who have all of the power. They develop skills. They develop strategies to deal with hearing people and appease hearing people who have power over them in stressful situations. That's exactly what we see happening here. And the Wisconsin Law Review article by Levine and Vernon talks about this at length. That to anyone familiar with deaf people, illogical answers and non sequiturs like we see popping up peppered all throughout the transcript and the audio here should scream out lack of comprehension. They are prized for help. It's true Mr. Fix didn't ask for an interpreter. But we're talking about whether due process was satisfied. And under the case law, it clearly was not. This court doesn't need to create any new categories to deal with this case. It's covered by the categories we already have. Because the test is so broad. Now, to back up for a second. We've got three different arguments here to deal with. They overlap somewhat, but they are different. There's two state law arguments. The first is that the statements were not knowingly and intelligently made. That's the broadest. The second, also under state law, is that the statements on the totality of the circumstances were not voluntary. And then within that, smaller yet, is the federal standard. That the agent's behavior here rendered the statements involuntary. Now the state has forfeited the first two arguments. In the motion to suppress, defense counsel at trial invoked both the Illinois Due Process Clause and the United States Due Process Clause. Those are live issues below. Opposing counsel argues that the trial court didn't specify which due process clause it was ruling on. That doesn't matter for purposes of forfeiture. It was a live argument below, and we raised it in our brief. They failed to do so. That's forfeited. Now, the state makes an argument that I've never seen before. I think it's novel in Illinois, that because we might have not addressed this issue, they should be forgiven for having failed to do so beforehand. There's no legal authority for that point, and this court should reject it. This court should honor that forfeiture. Now, on the first state law issue, whether they were knowing or voluntary, this is a special creature of Illinois law. It essentially takes Miranda from federal law and incorporates it into the voluntaryness for Illinois. It applies whether or not, under state law, whether or not Miranda applies. So even though this wasn't a custodial interrogation, under state law, which is made clear in Bernasco and then again in Brad, this court has to determine whether the statement itself was knowingly and intelligently made. That's much broader than a simple voluntariness test. And the state doesn't answer this argument in a convincing way. First, they concede that that's the law. But then, in an attempt to distinguish the two cases we've cited on that point, they make a mistake. The first one is People v. Daniels. Your Honor, this is towards the end of the first section of my brief on state law. It's the end of that section, just before the final section begins. The first case they try to distinguish, People v. Daniels, deals with Miranda. And it's a mentally handicapped person. The person is heralding back information that the police say. And the court found, the first district, I believe, found in that case that it's not possible to have a knowing and intelligent waiver of Miranda rights when you don't understand what's being said. Or there's at least a significant possibility that you don't understand what's being said. That applies to the statement here, under the language of Vernasco, which the first district interpreted in People v. Bragg, and the Supreme Court affirmed in its People v. Bragg decision. Instead of just a waiver having to be knowingly and intelligently made, the entire statement has to be knowingly and intelligently made under state law. This is clear from the decisions. The state has agreed with that analysis, but then made a mistake in arguing the applications of this case. The second case is out of Wisconsin, and it's a case that the state has had on elsewhere in the argument, the Hensley decision from the Wisconsin Appellate Court. There's two parts to that case. The first one deals with coercion under the federal due process clause, and the other part deals with Miranda. And its Miranda argument is squarely in line with what I've argued here today. The cops in that case get, it's a deaf individual, the police officers get the wrong type of sign language interpreter. They're trying to talk to this person. They get a sign language interpreter. It turns out they speak two different languages, like German and Japanese. They can't talk to each other. The Appellate Court there found that the statements were voluntary because they weren't coerced under the federal standard that's required, unlike in Illinois. But it also found that there couldn't be a knowing and intelligent waiver of Miranda rights because they didn't understand the content of the conversation. That's exactly the same issue. Now turning to the other state law argument, which again is broader than the federal due process clause. A person's statements under state law can be involuntary simply based on the person's characteristics. It doesn't have to be based on any kind of coercion. Characteristics means inability to understand, doesn't it? Absolutely, Your Honor. When you talk about characteristics, it's left-handed and you're talking about inability to understand. In addition to that, Your Honor, it's health issues. He repeatedly tells the officer that he had five heart surgeries in the preceding years. What do health issues have to do with it? Your Honor, the Illinois Supreme Court has said specifically that physical condition has to do with vomiting. Insofar as it affects his ability to understand. His general state and whether his will was overcome. There's a great Supreme Court case, Mincy v. Arizona. There's a person who's injured as part of a crime. The police go to his hospital bed, they surround him, and they interrogate him in pain on his hospital bed until he confesses. So that's what we're dealing with here? Your Honor, I think it's analogous. And again, it's the totality of the circumstances test. So we're just adding to the scale. And it's going up and up and up. And it's over the due process line. It sounds like it's not recognizable at this stage, counsel. Your Honor, if this court... If you're talking about interviewing a guy who has a hearing impairment and he says nothing about it to the police, in comparison to the police interrogating a guy who's been injured in the hospital room and is undergoing medical treatment, I'm having real trouble understanding how these two are comparable. Your Honor, I'm just indicating that's a factor that adds to the analysis. It's not just positive. I think if we look at the deafness of Mr. Fix and the factual finding that the trial court makes... The very first question I asked, I'm still waiting to hear a definitive response, is why shouldn't we require him to ask, why should the police be burdened and say it's a lack of due process because someone has a hearing impairment that they did not go out and get a sign language interpreter? Your Honor, the question on a due process, which is a slightly different question from that, is whether his statements were voluntary or not. I agree with you. It would help to ask for a sign language interpreter, but the statutes that apply here, the ADA, do not require it. The federal courts that have interpreted the ADA have held that in every case to look at it. The ADA is not squarely before us here. We don't have any ADA case on these facts, do we? There are not many. There is the People v. Long decision from this Court that seems to imply that a sign language interpreter would be required if there's not an exigent circumstance, which there was in Long, and so that was excused. But under the Supreme Court cases, Morgan, Murdoch, and Bernasco, this doesn't satisfy due process. And the trial court's factual finding that it was blatantly obvious that he was severely hearing impaired, that was from watching him on the witness stand with his hearing aid in place. The State has brought this on to NOVA review as a question of law, but then they want you to undermine the trial court's factual finding that he's severely hearing impaired. That means he's deaf. That's what that means. She watched him, Judge Graves watched him on the witness stand with his hearing aid in place and said it would be blatantly obvious that anyone who interacted with him would know that he's severely hearing impaired. That means the police officer, the DCFS investigators, would have known from the jump, and they had a duty to do more. That's what our cases seem to say. What that duty is, we're not sure, but they had a duty to do more than they did here. Thank you. Thank you. I'd like to make several very quick points and then entertain questions. With respect to the waiver argument, the State did arguments over in brief that the defendant's will was not overborn, and that is the test of whether his will was overborn under both State and federal laws. So the State did preserve this issue. With respect to the recording and whether the defendant could understand words, when Detective Mayfield asked him a question and then filed up to ask if he understood, he replied, and this was on C-156 of the record, quote, yeah, yeah, I hear you. So it seems like what the defendant does say on the recording is that he does, in fact, understand. With respect to the idea about these law review articles that are cited, they involve generalizations, and they were not included in the record in evidence, for example, through expert testimony. So the State's position is that they should be disregarded. Daniels and Hensley recited cases involving the knowing and intelligent prong. That deals with Miranda. And under Miranda, if you cannot understand the words used in Miranda warnings, for example, because of a mental deficit, that can make a Miranda waiver not knowing and intelligent. Under the context of interrogations of whether it's involuntary or not, knowing and intelligent means whether you understand the meaning and effect of confessing. And here there's no indication that the defendant had a mental impairment and thus was unable to understand the meaning and effect of what he said to the police. So that's the State's responses to the defendant's argument. And I'd entertain any other questions if you have any. There don't appear to be any. Thank you, Your Honor. Thank you. We'll take this matter under advisement and stand in recess until further call.